IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| BRANDY HAMILTON, | ) | CV 06-141-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.  Introduction

Plaintiff, Brandy Hamilton, brought suit against Defendant, United States, under the Federal Tort Claims Act.  This claim arises out of the extraction of three of Plaintiff's wisdom teeth by Dr. Ryan Huckeby.  Dr. Huckeby is employed by Partnership Health Center Dental Clinic, a federally qualified health center located in Missoula, Montana.  Defendant has filed a motion to dismiss based on the claim being barred by the two-year statute of limitations imposed by the Federal Tort Claims Act.  Because Plaintiff knew of her injury and its cause more than two years before filing suit, this Court lacks subject matter jurisdiction over Plaintiff's claims.

-1-

## II.  Factual Background

This claim arises out of the extraction of three of Plaintiff Brandy Hamilton's wisdom teeth on October 7, 2003. Complaint ¶ VII (April 4, 2007).  Dr. Ryan Huckeby, employed by Defendant United States, performed this procedure at Partnership Health Center Dental Clinic, a healthcare facility operated by Defendant.  <u>Id</u>. at  ¶¶ V, VII.  Throughout the procedure, Plaintiff was under local anesthetic.  <u>Id</u>. at ¶ VII.  On October 8, 2003, Plaintiff contacted Dr. Huckeby because she continued to experience numbness on the right side of her jaw though the anesthetic had otherwise worn off.  <u>Id</u>. at ¶ IX.  Dr. Huckeby informed Plaintiff the numbness was "most likely" a result of nerve compression during extraction.  <u>Id</u>.  He told Plaintiff the numbness would resolve.  <u>Id</u>.

Plaintiff saw Dr. Huckeby on October 15, 2003 for a follow-up examination.  <u>Id</u>. at ¶ X.  She continued to complain of pain in her right mandible as well as persistent numbness.  <u>Id</u>. During this exam, Dr. Huckeby found Plaintiff had lost a clot in one of the sockets.  <u>Id</u>.  He irrigated the socket and applied dry socket paste.  <u>Id</u>.  Plaintiff followed up with Dr. Huckeby on October 23, 2003 and November 5, 2003.  <u>Id</u>. at ¶ XI.  During these visits, Dr. Huckeby indicated the numbness was improving. <u>Id</u>.

On November 22, 2004, over one year from the date of her

last appointment with Dr. Huckeby, Plaintiff saw Dr. Michael Young, a neurologist.  <u>Id</u>. at ¶ XII.  She informed Dr. Young of her continued numbness in her lower right jaw.  <u>Id</u>.  Dr. Young diagnosed this as right mental neuropathy related to the extraction of her right wisdom tooth.  <u>Id</u>.  During this visit, Plaintiff understood there was no guarantee the injury would improve.  <u>Id</u>.  Plaintiff filed an administrative claim with the Director of Health and Human Services in Billings, Montana on October 24, 2005.  Plaintiff alleges she continues to experience persistent pain in her lower right jaw area as well as chronic numbness in her right lower lip which affects her speech.  <u>Id</u>.

### III.  Analysis

#### A.   Standards for Dismissal

Defendant's motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  Dismissal under Rule 12(b)(1) is proper where a court lacks jurisdiction over the subject matter of the suit.  A federal district court lacks subject matter jurisdiction when a claim does not comply with the statute of limitations in 28 U.S.C. § 2401(b).  <u>Rosales v. United States</u>, 824 F.2d 799, 802 (9th Cir. 1987).

Under Rule 12(b)(6), "an action may be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Gibson v. United States</u>, 781 F.2d

1334, 1337 (9th Cir. 1986)(quotations omitted).  In assessing this motion, the allegations of material fact in Plaintiff's complaint must be taken as true and construed in the light most favorable to Plaintiff because she is the nonmoving party. <u>Pacheco v. United States</u>, 220 F.3d 1126, 1127 (9th Cir. 2000).

**B.    Federal Tort Claims Act Statute of Limitations**

Defendant seeks an order dismissing Plaintiff's negligence claim.  Defendant asserts Plaintiff's claim is barred by the two-year statute of limitations imposed by the Federal Tort Claims Act ("FTCA").  28 U.S.C. § 2401(b).  Resolution of Defendant's motion rests on when Plaintiff's injury accrued based on § 2401(b)'s requirement that the injured party must present her claim in writing to the appropriate agency within two years after the claim has accrued.

Statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " <u>United States v. Kubrick</u>, 444 U.S. 111, 116 (1979) (quoting <u>Railroad Telegraphers v. Railway Express Agency</u>, 321 U.S. 342, 349 (1944)).  Statutes of limitations afford plaintiffs a reasonable amount of time to present their claims, and they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously

-4-

impaired by the loss of evidence.  <u>Kubrick</u>, 444 U.S. at 117.

Courts rarely invoke tolling of the statute of limitations in suits against the government because such suits involve a waiver of sovereign immunity.  <u>Zavala v. United States</u>, 876 F.2d 780, 783 (9th Cir. 1989).  No more favorable tolling doctrine should be employed against the government than is employed in suits between private litigants.  <u>Irwin v. Dept. of Veteran Affairs</u>, 498 U.S. 89, 96 (1990).

The two-year statute of limitations imposed by Congress on claims brought under the FTCA encourages prompt presentation of claims.  <u>Id</u>.  Specifically, § 2401(b) requires that tort claims brought under the FTCA be presented to the appropriate federal agency "within two years after such claim accrues."  The general rule under the FTCA is that a tort claim accrues at the time of the plaintiff's injury.  <u>Kubrick</u>, 444 U.S. at 119.  In medical malpractice claims brought under the FTCA, however, the claim accrues when (1) the plaintiff is aware he has been injured and (2) the plaintiff is aware of the cause of his injury.  <u>Kubrick</u>, 444 U.S. at 122.

Defendant argues Plaintiff's claim accrued on October 15, 2003 when Plaintiff attended a second follow-up appointment complaining of persistent numbness and pain.  Defendant asserts Plaintiff's claim, filed on October 24, 2005, is time-barred because it was filed more than two years after her claim accrued.

Plaintiff argues her claim did not accrue until November 6, 2003, the date she began to suspect her injury was not just a temporary side effect.  Plaintiff asks the Court to deny Defendant's motion to dismiss because her claim was timely filed within the two-year statute of limitations.

Accrual of a claim does not wait until the plaintiff becomes aware that his injury was negligently inflicted.  Id. at 123. "[A] plaintiff in possession of the critical facts that he has been injured and who has inflicted the injury" can protect himself by seeking advice in the medical and legal community. Id.  In Kubrick, neomycin irrigation was used to treat an infection in Kubrick's right femur in April 1968.  Id. at 113. Six weeks after treatment, Kubrick noticed a ringing sensation in his ears as well as some hearing loss which was diagnosed as bilateral nerve deafness.  Id. at 113-14.  In January 1969, he was informed that his condition could have resulted from the neomycin treatment.  Id.  Kubrick filed a claim under the FTCA in 1975 following a conclusion by the VA Board of Appeals that "Kubrick's hearing loss may have been caused by neomycin irrigation [and] also . . . that there was fault on the part of the VA in administering [the neomycin] by irrigation."  Id. at 115.

On appeal, the Supreme Court held Kubrick's claim was brought after expiration of the statute of limitations, stating

Kubrick need only have made inquiry among doctors with average training and experience in such matters to have discovered that he probably had a good cause of action.  Id. at 123.  The Court stated these inquiries have the potential to inform injured parties that their treating physician may have failed to live up to minimum standards of medical proficiency.  Id. at 122. Congress did not intend for accrual under the FTCA to wait until Kubrick knew his injury was negligently inflicted.  Id. at 123. Plaintiffs, such as Kubrick, who possess facts about their injury must protect themselves by seeking advice in the medical and legal community.  Id.  To not require this would undermine the purpose of the statute of limitations, which requires the reasonably diligent presentation of tort claims against the government.  Id.

The Ninth Circuit followed Kubrick in Davis v. United States and Herrera-Diaz v. United States, holding plaintiffs "[w]ith knowledge of the fact of injury and its cause [are] on the same footing as any negligence plaintiff.  The burden is then on the plaintiff to ascertain the existence and source of fault within the statutory period.  It follows that diligence or lack of diligence in these efforts is irrelevant.  In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue."  Davis, 624 F.2d 328, 331 (9th Cir. 1981); Herrera-Diaz, 845 F.2d 1534,

-7-

1537 (9th Cir. 1988).  In <u>Herrera-Diaz</u>, Victor Herrera-Diaz was
born premature on November 8, 1977 and suffered breathing
problems.  <u>Herrera-Diaz</u>, 845 F.2d at 1535.  His mother was
informed when Victor was three months old that Victor had brain
damage.  <u>Id</u>.  She did not inquire into the cause of the brain
damage at this time.  <u>Id</u>.  In April 1978, Victor was diagnosed
with cerebral palsy which his mother was told was caused by a
lack of oxygen at birth.  <u>Id</u>. at 1536.  Again, Victor's mother
did not inquire as to what caused Victor's lack of oxygen.  <u>Id</u>.
A claim under the FTCA was filed in June 1984 on Victor's behalf.
<u>Id</u>.  The court concluded his claim was barred by the statute of
limitations because the cause of his injury should have been
known at the time he was diagnosed with cerebral palsy.  <u>Id</u>. at
1537.

     Plaintiff argues her claim is distinguishable from <u>Kubrick</u>
because she relied upon Dr. Huckeby's statement that her symptoms
were temporary.  Plaintiff argues under <u>Rosales v. United States</u>,
824 F.2d 799 (9th Cir. 1987) and <u>Raddatz v. United States</u>, 750
F.2d 791 (9th Cir. 1984), that her reliance upon Dr. Huckeby's
statement did not allow her claim to accrue under the FTCA.

     In <u>Rosales</u>, the Ninth Circuit held an FTCA claim does not
accrue where medical professionals repeatedly assure the injured
party that her injuries are normal and not indicative of an
actual injury.  <u>Rosales</u>, 824 F.2d at 805.  The court concluded a

-8-

plaintiff is not expected to know the cause of her injury prior to medical professionals being capable of doing so. Id. at 805. Rosales prematurely delivered Victoria on March 7, 1982 and was told the child suffered from lazy lid which she would outgrow. Id. at 801. Until September 1982, doctors made no indication Victoria's condition was permanent. Id. In September 1982, a doctor informed the Rosaleses that Victoria may be retarded, but he did not link the IUD to the condition. Id. Not until June 1984 were the Rosaleses aware the retardation was likely caused by a bacterial infection which inturn was likely caused by the IUD. Id. The Rosaleses filed their claim on July 9, 1984. Id. at 802. The court concluded the claim was timely filed based upon the doctors' continued assurances that Victoria's lazy lid was temporary and that no injury was present. Id. at 804. "Ordinarily, a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so." Id. at 805.

In Raddatz, the plaintiff had an IUD inserted on February 28, 1977. Raddatz, 750 F.2d at 793. Following the procedure, Raddatz was informed by the physician that the right side of her uterus was perforated which would cause pain and cramping for a few days. Id. at 793. Raddatz visited the emergency room twice following the procedure due to pain, cramping, and bleeding. Id. On March 7, 1977, she returned to the physician who had inserted

-9-

the IUD.  Id.  He informed her the side effects were acceptable.
Id.  She followed up with this physician on March 10, 1977 and
March 14, 1977 and was again told the side effects were normal.
Id.  On March 29, 1977, she consulted a new physician who
diagnosed her with pelvic inflammatory disease.  Id.  She filed
her claim on March 1, 1979.  The court held her claim accrued on
March 29, 1977 when the new physician informed her she had
developed an infection.  Id. at 796.  The Ninth Circuit did not
base its holding on Kubrick because the tear was the cause of a
more serious condition—pelvic inflammatory disease.  Id.  The
court held "[w]hen a claim of malpractice is based on a failure
to diagnose, warn, or treat a patient for a pre-existing injury,
rather than affirmative conduct creating a new injury,
'identification of both the injury and its cause may be more
difficult for a patient.' " Id. (quoting Augustine, 704 F.2d at
1078).

The Ninth Circuit relied on its holdings in Rosales and
Raddatz to decide Winter v. United States, 244 F.3d 1088 (9th
Cir. 2001).  In Winter, electrodes were placed in the plaintiff's
legs between 1983 and 1986.  Id. at 1089.  In 1989, he developed
cellulitis which he speculated was caused by the electrodes.  Id.
Upon inquiry, however, he was told by several doctors, including
the doctor who implanted the electrodes, that the electrodes were
most likely not the cause.  Id.  He filed a claim under the FTCA

in July 1994.  <u>Id</u>. at 1090.  The government argued his claim was barred by the FTCA's statute of limitations.  The court disagreed.  It held, based on <u>Raddatz</u> and <u>Rosales</u>, that Winter did not know the cause of his injury in January 1989, as the government contended.  <u>Id</u>. at 1090-92.  The medical professionals treating Winter were unaware of the cause of the cellulitis, so there was no way Winter could have known.  <u>Id</u>. at 1092.  A claim does not accrue under the FTCA when a plaintiff seeks medical advice regarding the cause of injury but is "not told one word about the medical cause of his injuries, other than that it was highly unlikely to be the cause that [is ultimately alleged in his FTCA claim]."  <u>Id</u>.  Unlike the injured party in <u>Kubrick</u>, Winter was not on clear notice of the cause of his injury prior to July 1992.  Therefore, his claim was not barred by the statute of limitations.

Unlike the injured parties in <u>Raddatz</u>, <u>Rosales</u>, and <u>Winter</u>, Plaintiff was told the medical cause of her injury by Dr. Huckeby on October 8, 2003.  Additionally, Plaintiff did not seek opinions from other medical professionals.  Nor was she misinformed, as was the injured party in <u>Winter</u>, of the cause of her injury.  Plaintiff was aware of her injury on October 8, 2003 when she first experienced numbness in her right mandible.  At the very least, she was aware of her injury on October 15, 2003, when she returned to Dr. Huckeby's office for a second follow-up

examination because she continued to suffer pain and numbness in her right mandible.  On October 8, 2003, Plaintiff was also informed of the cause of her injury by Dr. Huckeby; he told her the injury was a result of nerve compression during extraction. At that point, Plaintiff, like the injured parties in Kubrick and Herrera-Diaz, had the burden to determine the source of fault within the statutory period based upon her knowledge of her injury and its cause.  Under Herrera-Diaz and Kubrick, once Plaintiff had this knowledge, she had the two-year statutory period to consult with medical and legal professionals to determine whether the injury was the result of Dr. Huckeby's negligence.  Plaintiff did consult with Dr. Young, a neurologist, on November 22, 2004.  He diagnosed her with right mental neuropathy following right wisdom tooth extraction.  Plaintiff understood from her visit with Dr. Young that there was no guarantee her condition would improve.  Plaintiff did not file a claim under the FTCA for nearly one year following this diagnosis.

Plaintiff relies on, United States v. Meyer, 464 F. Supp. 317 (D. Colo. 1979), an out-of-circuit opinion, to further support her argument that her claim did not accrue prior to October 24, 2003 because Dr. Huckeby told her the injury was temporary.  In Meyer, the court held the plaintiff timely filed her claim based upon her belief the nerve damage caused by dental

extraction of her third molars would disappear.  464 F. Supp. at
318, 324.  The procedure was performed on April 12, 1974 and on
April 26, 1974 she was still experiencing numbness which her
dentist told her was temporary.  Id. at 319.  The Government
argued the claim accrued on the date of the extraction.  The
court, however, concluded the accrual of the injury did not occur
any earlier than November 1974 and thus Meyer timely filed at the
time she became aware the nerve damage was not temporary.  Id. at
324.

    Plaintiff's use of Meyer to directly support her contention
that prior to knowing her injury was permanent, her claim could
not accrue is improper because Meyer was decided prior to
Kubrick.  The court in Meyer based its holding on Exnicious v.
United States, a Tenth Circuit opinion holding plaintiffs must
know whether the injury was negligently inflicted prior to the
statute of limitations beginning to run.  563 F.2d 418, 424 (10th
Cir. 1977).  This holding, however, was overturned by the Supreme
Court in Kubrick.  The Court held ignorance of legal rights
should not toll the statute of limitations.  Kubrick, 444 U.S. at
121 n. 8, 122.  Because Meyer is no longer the correct
interpretation of the accrual period for the FTCA statute of
limitations, it is not persuasive here.

    Defendant contends Plaintiff's argument that her claim did
not accrue because she relied on her treating dentist's advice

-13-

that the injury was temporary is improper under <u>Ashley v. United States</u>, 413 F.2d 490 (9th Cir. 1969).  In <u>Ashley</u>, the court held "[t]he continuous treatment doctrine is not available to toll the statute of limitations in medical malpractice cases under the FTCA where the plaintiff knows of the acts constituting negligence."  <u>Id</u>. at 492.  The plaintiff in <u>Ashley</u> was injured during the drawing of blood from a vein in his forearm when the needle contacted a nerve on September 6, 1963.  <u>Ashley</u>, 413 F.2d at 491-92.  The plaintiff immediately experienced pain and swelling in his forearm.  <u>Id</u>. at 492.  Subsequently, he consulted his private physician who told him to return to the VA hospital where he had suffered the injury.  <u>Id</u>.  The plaintiff was referred to a consulting physician in Tucson who administered various treatments to treat the injury.  <u>Id</u>.  Plaintiff filed his FTCA claim in September of 1966 after being informed his injury would be permanent.  <u>Id</u>.

The court held the plaintiff's claim was barred by the statute of limitations because he "knew of the acts constituting the alleged malpractice when they were done on September 6, 1963, and he also knew, within a day or two thereafter if not at the same time, that he had been injured and that it had not been expected that the injurious consequences would result from the test."  <u>Id</u>.  "To hold that one who knows an injurious tort has been committed against him by the Government may delay the filing

-14-

of his suit until the time, however long, when he becomes
knowledgeable as to the precise extent of the damage resulting
from the tort would impose intolerable burdens upon the
Government and would, in effect, frustrate the expressed will of
the Congress." Id. at 493.

The Ninth Circuit relied on its holding in Ashley in
deciding Outman v. United States where it held the plaintiff's
FTCA claim was barred by the two-year statute of limitations
because he knew of his injury and its cause in 1977, more than
two years prior to the filing of his claim in 1983. 890 F.2d
1050, 1052-53 (1989). The plaintiff in Outman was diagnosed with
tardive dyskinesia as a result of being prescribed neuroleptics
following a diagnosis of schizophrenia. Id. at 1051. In 1982,
Outman learned he had been misdiagnosed with schizophrenia and
actually suffered from manic-depressive disorder. Id. He filed
his FTCA claim based on misdiagnosis in 1983. Id. at 1052. The
Ninth Circuit concluded his claim was barred because he and his
wife knew of his injury, tardive dyskinesia, and its cause, the
neuroleptics, in 1977 when the VA admitted the drugs caused the
disorder. Id. at 1051-52. Despite the fact Outman continued to
treat with the VA until 1982, the court held the statute was not
tolled under the continuous treatment doctrine because the
doctrine is not available in FTCA cases. Id. at 1053.

Plaintiff's assertion that her claim did not accrue until

after she ceased treatment with Dr. Huckeby is not supported by
Ashley and Outman.  The continuous treatment doctrine is
unavailable in FTCA cases.  Her claim, according to Kubrick,
accrued when she knew of her injury and its cause.  Plaintiff
knew of her injury by at least October 15, 2003 when she
experienced continued numbness despite the anesthetic wearing
off.  Dr. Huckeby informed her the numbness and pain were the
result of nerve compression caused during extraction.  Based upon
this information, Plaintiff knew of both the injury and its cause
by October 15, 2003.  Thus, her FTCA claim, filed on October 24,
2005, is barred by the two-year statute of limitations.

### IV.  Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that
Defendant's Motion to Dismiss (dkt #13) is GRANTED.  Plaintiff's
Complaint is DISMISSED for lack of subject matter jurisdiction.

The Clerk of Court is directed to close this case.

Dated this 16th day of April, 2008.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT